# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY ELLEN FRESE;<br>BRETT FRESE,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY SEGWAY TOURS OF<br>WASHINGTON, DC, LLC, a/k/a CITY<br>SEGWAY TOURS,<br><br>    Defendant. | Civil Action No. 16-2373 (JEB) |

## MEMORANDUM OPINION

To see as much as possible of the city during their time here, some tourists choose to spend a few hours scuttling around downtown Washington in guided convoys of Segways. For one such tourist, however, the ride was not a smooth one. In the autumn of 2013, as her particularly rainy Segway tour drew to a close, Plaintiff Mary Ellen Frese fell from her machine onto the pavement and broke her leg. She and her husband now seek six million dollars in damages from the organizer of that tour, Defendant City Segway Tours. Among the Freses' many claims is the allegation that a City Segway employee deceived Mrs. Frese into going ahead with the tour by telling her that Segways are "safe in the rain" when, in fact, they are anything but. City Segway now moves to dismiss three causes of action arising out of that exchange, arguing that the Freses have failed to sufficiently allege a misrepresentation. As it does not agree, the Court will deny the Motion.

1

**I.      Background**

According to the Amended Complaint, which the Court must presume true at this stage, in mid-September 2013, Mary Ellen Frese booked a tour for herself and some colleagues with City Segway, which runs group Segway tours around Washington's downtown area. See Am. Compl., ¶¶ 8-10. She scheduled the tour for October 10, which dawned in heavy rain. Id., ¶¶ 10, 12. Frese thus called City Segway that morning to ask if the tour would still proceed, and a City Segway employee said that it would. Id., ¶¶ 12-13. Frese then asked if it was safe to ride a Segway in such conditions; the employee assured her Segways were safe in the rain. Id.

Whether or not the Segway that Frese rode (and subsequently fell from) was indeed "safe in the rain" is central to the dispute before the Court. Segways rely on a technology called "dynamic stabilization" to remain upright and allow them to move according to the direction in which the rider leans. Id., ¶ 15. The more one leans, the faster the Segway travels. Id. But for the system to work, the wheels must have traction. Id., ¶ 16. Segway tells owners that the machine "must grip the ground for [it] to remain upright" and that if its "tires cannot generate a reaction force," the Segway "cannot stabilize itself." Id. (quoting Basic Rider Optimization Training for the Segway Human Transporter i Series, e Series and p Series Models 59 (2004) ("Optimization Training"), http://www.segway.com/media/1641/basic_rider_optimization_training_brit_v35aa.pdf).

According to the Amended Complaint, if a wheel loses traction, the Segway will slow down and pivot towards the slipping wheel, causing the rider to inadvertently lean as she tries to regain balance. Id., ¶ 17. But this reaction has an unfortunate consequence. When the rider leans to stabilize herself, the machine accelerates suddenly as it responds to what it perceives as a failure of the slowed wheel (which has slipped) to keep up with the rider's apparently intended

2

motion.  Id.  The sudden acceleration generally causes the rider to lose balance and fall toward the side of the slipping wheel.  Id., ¶ 18.  This phenomenon – namely, Segway riders' losing their balance on surfaces with poor traction – is apparently well known to experienced Segway riders and engineers, and has been disclosed in the device's patent.  Id., ¶ 28.

A wet surface has around 50% less friction than a dry surface, making it much more likely that a Segway will slip in such conditions.  Id., ¶ 19.  Segway literature therefore includes various warnings about avoiding slippery surfaces.  The User Manual for the Segway PT model – the model that Mary Ellen Frese allegedly rode, see Am. Compl., ¶ 35 – contains the following language:

> **Avoiding Hazards**
>
> The [Segway] PT is highly maneuverable and allows you to easily navigate around obstacles.  However, to prevent the loss of traction, you must always be careful when riding and learn to identify and avoid slippery, icy, or wet surfaces, loose materials (sand/gravel), steep slopes, and obstacles.  Stop and step off your PT and use Riderless Balance Mode . . . to move your PT over unsafe surfaces or terrain.
>
> **Avoiding Slips**
>
> The PT Tires must be able to grip the ground for the machine to stay upright!  Slips occur when the tires lose traction, potentially causing loss of control and a fall.  Abrupt maneuvers, and riding over slippery surfaces, loose objects, and materials, or steep slopes can cause the tires to lose traction . . . .
>
> Avoid riding on slippery surfaces such as snow, ice, wet floors, wet grass, or any other surface that might cause slipping.

User Manual: Segway Personal Transporter 62 (2014), http://www.segway.com/media/1195/24010-00001_aa_se_um_en_usb_user-manual.pdf.

The Rider's Guide for the Segway HT model (not PT) has this to say about slippery surfaces:

> **Avoid slippery surfaces.**
>
> A person slips when stepping on ice or other slippery surfaces because the person loses traction – the person's shoe does not grip the surface. The Segway HT can slip in the same way. If a [t]ire loses traction, then the Segway HT cannot move to stay upright and the rider could fall. To be safe, you must avoid slippery surfaces, such as snow, ice, wet floors, wet grass, or any other surface that you might slip on if you were running. Also, remember that wet, soapy, and oily [t]ires can lose traction and slip on any surface, so use extreme caution.

The Segway HT Rider's Guide 7 http://www.segway.com/media/1639/riders_guide.pdf.

Last, the Basic Rider Optimization Training booklet, which is available to Segway instructors and employees, see Am. Compl., ¶ 26, likewise counsels HT riders that, "[t]o be safe, you must avoid slippery surfaces, such as ice, wet floors, wet grass, or any other surface that you might slip on if you were running." Optimization Training at 59.

It bears noting that Defendant disputes the relevance of two of these incorporated documents – the Rider's Guide and Optimization Training document – because they pertain to models of the Segway HT, whereas Mary Ellen Frese alleges she rode a Segway PT. In their Opposition, Plaintiffs maintain that these documents are nonetheless "relevant because the traction control systems of the Segway PT were not altered from previous generations of the product." Opp. at 6 n.3. Whoever is right, the Court believes that resolution of this type of factual dispute is not appropriate on a motion to dismiss. As at least one of the documents quoted in the Amended Complaint indisputably does pertain to the PT, the Court need not address this issue further.

Back to Mary Ellen Frese and her ill-fated Segway tour. After speaking with the City Segway employee, Plaintiff and her colleagues appeared for the tour, where she signed a "Release and Indemnification Form" relying on the assurances she received over the phone. See

4

Am. Compl., ¶¶ 31-32. After some Segway training, the Frese tour group – draped in rain ponchos – set off at 10:00 a.m. Id., ¶¶ 32-35.

As the tour was coming to an end around 1:00 p.m., Frese was ascending a wet sloped surface when the wheels of her Segway suddenly lost traction. Id., ¶ 35. The Segway made "unexpected destabilizing motions" that threw Frese violently to the ground. Id. Because of the fall, Frese fractured her right tibial plateau (where the shinbone meets the knee) and underwent multiple surgeries. Id., ¶ 36. She also acquired an infection while in the hospital and now has permanent injuries to her right leg and knee that will probably require further surgery. Id., ¶¶ 36-37.

Plaintiffs originally filed this suit against City Segway on October 7, 2016, in D.C. Superior Court. See ECF No. 1-2. After its removal, they subsequently filed an Amended Complaint on January 17, 2017, see ECF No. 16, which asserts nine tort and contract counts under District of Columbia law. Defendant has since answered most of these allegations, see ECF No. 17, but has moved to dismiss three causes of action that arise out of Frese's exchange with the City Segway employee – namely, counts of deceptive trade practices (III), fraudulent misrepresentation (IV), and breach of express warranty (VII). That Motion is now ripe for decision.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States,

5

617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Rule 12(b)(6)'s pleading standard is "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), as a count will survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Dura Pharm., 544 U.S. at 347). While "detailed factual allegations" are not necessary to withstand a dismissal motion, id. at 555, a complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint may survive even if "'recovery is very remote and unlikely'" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in the complaint is "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Where fraud is alleged, however, the complaint must state "with particularity" the circumstances constituting the fraud. See Fed. R. Civ. P. 9(b).

In evaluating the sufficiency of Plaintiff's Complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may thus consider those

6

materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see Marshall v. Honeywell Tech. Sols., Inc., 536 F. Supp. 2d 59, 65-66 (D.D.C. 2008).

**III. Analysis**

In the three counts that Defendant moves to dismiss, Plaintiffs allege that: (A) City Segway violated D.C.'s consumer-protection statute by falsely telling Frese that it was safe to use a Segway in the rain (Count III); (B) Defendant made an intentional and material misrepresentation by telling Frese that the Segway was "safe in the rain" when it is known to be unsafe on wet surfaces (Count IV); and (C) City Segway created an express warranty by claiming that the Segway was safe to use in the rain – a promise it did not live up to (Count VII). See Am. Compl., ¶¶ 59-66, 67-73, 89-95.

The instant Motion aims a single stone at this trio of birds – it argues that all three counts fall because the Freses have not adequately alleged a false statement. See Mot. at 8. City Segway does not, however, appear to dispute that the Freses' pleadings are otherwise sufficient. The Court will therefore address only their purported failure to sufficiently allege misrepresentation.

A. Count III: D.C. CPPA

Count III alleges violations of subsections (a), (e), and (f) of the District's Consumer Protection and Procedures Act. See Am. Compl., ¶¶ 62-64. Under subsection (a) of the CPPA, a person may not represent that goods or services have "characteristics[,] . . . uses, [or] benefits . . . that they do not have." D.C. Code. § 28-3904(a). Under subsection (e), a merchant may not "misrepresent as to a material fact which has a tendency to mislead," while under subsection (f), it is a violation to "fail to state a material fact if such failure tends to mislead." Id. § 28-3904 (e)-

7

(f). CPPA claims are not held to the heightened pleading standard of Rule 9(b), and because it is a remedial statute, the Act "must be construed and applied liberally to promote its purpose." McMullen v. Synchrony Bank, 164 F. Supp. 3d 77, 90-91 (D.D.C. 2016) (quoting Sundberg v. TRR Realty, LLC, 109 A.3d 1123, 1129 (D.C. 2015)).

As mentioned, City Segway's only attack is on whether the Amended Complaint adequately alleges a misrepresentation, which is "an assertion that is not in accord with the facts." Hickey v. Scott, 738 F. Supp. 2d 55, 69 (D.D.C. 2010) (quoting Sarete, Inc. v. 1344 U Street Ltd. Partnership, 871 A.2d 480, 493 (D.C. 2005)); see also Restatement (Second) of Contracts § 159 cmt. a (1981) ("Whether a statement is false depends on the meaning of the words in all the circumstances, including what may fairly be inferred from them.").

City Segway argues that to adequately allege misrepresentation, Plaintiffs must provide facts to show that its employee's assertion was false – namely, that the Segway was not "safe in the rain." Repl. at 4. But, it says, none of the documents Plaintiffs rely on "state[s] that it is not safe to operate a Segway in rainy weather." Mot. at 8. Instead, the Segway documents "only state that operators of a Segway should avoid surfaces that are prone to cause slipping or a loss of traction, which would obviously include snow, ice, wet surfaces, loose materials, steep slopes or even wet grass." Id. at 9. That Segway riders should avoid wet surfaces "does not mean that a Segway is not safe to operate on wet surfaces or in rainy weather," City Segway argues. See Repl. at 3. It just means that the rider "must exercise caution when operating the vehicle in those conditions." Id.

The Freses counter that this argument "essentially asks the Court to abandon logical or deductive reasoning" by concluding that "allegations of the Segway's dangerousness on wet surfaces do not equate with allegations that the Segway is unsafe in the rain." Opp. at 9. They

8

argue instead that, on a motion to dismiss, when all reasonable inferences must be drawn in the plaintiff's favor, "allegations that the [Segway] has a propensity to act erratically in wet conditions also equate with the [Segway] being more dangerous to operate in rainy conditions." Id. at 2 (emphasis omitted).

The Court agrees. On a motion to dismiss, "[it must] accept facts alleged in the complaint as true and <u>draw all reasonable inferences from those facts in the plaintiffs' favor</u>." Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 513-14 (D.C. Cir. 2016) (emphasis added). The Amended Complaint includes numerous facts suggesting that Segways are unsafe on wet surfaces. Most notably, Segway's User Manual tells riders to "be careful when riding and learn to identify and avoid . . . wet surfaces." User Manual: Segway Personal Transporter, at 62. It adds that the Segway's "[t]ires must be able to grip the ground for the machine to stay upright," so users should "avoid riding on slippery surfaces such as . . . wet floors . . . or any other surface that might cause slipping." Id. The facts also suggest that a Segway has significantly less traction on wet roads, and that a loss of traction can cause destabilization, unintended acceleration, and potential injury. See Am Compl., ¶¶ 14-19. It hardly seems unreasonable to infer from the facts just described that Segways are not safe in the rain, given how precipitation tends to make surfaces wet. See, e.g., Singin' in the Rain (MGM Studios 1952).

City Segway further argues that Segway's warnings about avoiding wet surfaces do not necessarily mean Segways are unsafe to use in the rain. See Mot. at 8-10. It analogizes to a bike or a car – though both may be "prone to instability and loss of traction on wet surfaces," they are not necessarily unsafe to use in wet weather. Id. at 8-10. Plaintiffs, in response, point to various mechanical differences between cars and bikes, on one hand, and Segways, on the other. See Opp. at 9 n.5. These comparisons and distinctions seem beside the point. Of course, the fact that

9

Segway warns its riders to avoid wet surfaces does not necessarily mean its products are unsafe in the rain. But an inference need not be necessary to be reasonable. See, e.g., United States v. Jackson, 113 F.3d 249, 251 (D.C. Cir. 1997) ("Although it is not a necessary inference from a broken side vent window that a car has been stolen, it is . . . a reasonable inference."). Here, the facts suggest a Segway is not safe on wet surfaces, so it is reasonable (and hence necessary at this juncture, see Urban Outfitters, 830 F.3d at 513-14) for the Court to infer that a Segway is not safe in the rain.

Plaintiffs therefore have adequately alleged misrepresentation because the City Segway employee's assertion that its products were safe in the rain does not accord with the facts. See Hickey, 738 F. Supp. 2d at 69. As Defendants apparently concede that Plaintiffs have sufficiently alleged the other elements of their CPPA claims, Count III survives.

B. Count IV: Fraudulent Misrepresentation

Next up, Count IV alleges fraudulent misrepresentation or common-law fraud. The essential elements of fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken in reliance upon the representation. Saucier v. Countrywide Home Loans, 64 A.3d 428, 438 (D.C. 2013). Unlike a CPPA claim, common-law fraud is governed by the heightened pleading standard imposed by Rule 9(b). Synchrony Bank, 164 F. Supp. 3d at 95. That Rule "requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'" Iqbal, 556 U.S. at 686 (quoting Fed. R. Civ. P. 9(b)). To satisfy this pleading standard in a fraud claim, a plaintiff must identify "who precisely was involved in the fraudulent activity," the "time, place, and content of the false misrepresentations," the "fact misrepresented," and "what was retained or given up as a

10

consequence of the fraud." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256-59 (D.C. Cir. 2004) (quotation omitted).

Defendant's Motion only attacks the sufficiency of the allegations as to element (1) – a false representation. The analysis in Section III.A, *supra*, explains why that challenge does not succeed. Plaintiffs' allegations, furthermore, satisfy the heightened Rule 9(b) requirements because they identify who made the misrepresentation (a City Segway employee), when he made it (over the phone on the morning of October 10, 2013), the fact misrepresented (that Segways are safe in the rain), and what steps were taken a consequence of the fraud (Frese's participation in the scheduled tour). They likewise allege an intent to deceive and that the phone conversation was material to Plaintiffs' decision to go through with the tour. The Court therefore declines to dismiss Count IV at this stage.

### C. Count VII: Breach of Express Warranty

In Count VII, Plaintiffs claim a breach of express warranty under the D.C. commercial code. See Am. Compl., ¶¶ 91-95. They argue that, by representing that the Segway was safe in the rain, City Segway made an "affirmation of fact or promise" that the Segway would conform to that description, when this assurance was factually untrue. Id. (quoting D.C. Code § 28:2A-210(a)(1)). City Segway rejoins, in familiar fashion, that to state a claim for breach of express warranty, "Plaintiffs must allege that a statement made by Defendant was false," and that they have not done so. See Mot. at 7.

An express warranty arises between a lessor and a lessee when the lessor makes an "affirmation of fact or promise" relating to the goods or a "description of the goods," and that promise or description forms part of the basis of the bargain. See D.C. Code § 28:2A-210(a)(1)-(2) (describing creation of express warranty in leasing arrangement). If the goods do not

11

conform to the promise or description, the lessor may be liable for damages. Id. § 28:2A-508(d). As mentioned, City Segway's only challenge to the warranty claim is that the Freses have failed to allege a false statement. In other words, it does not argue that the lessor-lessee provisions of the D.C. Code do not apply to the transaction or dispute that an express warranty was created. Strictly speaking, a plaintiff need not allege that a lessor's affirmation or description was false to make out a breach-of-express-warranty claim. She need only allege that there was a breach of the warranty – i.e., that the goods did not conform to the description or promise, regardless of the statement's accuracy. See Wetzel v. Capital City Real Estate LLC, 73 A.3d 1000, 1005 (D.C. 2013) (listing elements of breach of express warranty as: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach); see also 18 Williston on Contracts § 52:59 (4th 2015) ("Under the Uniform Commercial Code, a buyer who has accepted goods that fail to conform to a warranty made by description can hold the seller liable in damages . . . ."). Assuming (and City Segway does not seem to dispute this) that its employee expressly warranted that a Segway is safe in the rain, Plaintiff has adequately alleged failure to conform with that warranty for the reasons previously described. Count VII therefore also may proceed to discovery.

## IV.     Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss. An Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 14, 2017